UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD JAMES CARGILL,

          Petitioner,

                                 CASE NO. 2:11-CV-11360
  v.                             JUDGE BERNARD A. FRIEDMAN
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

LLOYD RAPELJE,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Miranda (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.    *Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.    *Cause and Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          3.    *Fundamental Miscarriage of Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     E.    *Sentencing (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     F.    *Prosecutorial Misconduct (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.    *Use of Videotaped Statement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Perjured Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     G.    *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
              a. Failure to Raise Miranda Objection . . . . . . . . . . . . . . . . . . . . . . . . . . 27
              b. Failing to Impeach King . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
              c. Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
              d. Failure to Suppress Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . 32
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
     I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.     Petitioner Harold James Cargill is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2.     On January 29, 2008, petitioner was convicted of two counts of armed robbery, MICH. COMP. LAWS § 750.529; and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Jackson County Circuit Court.  Petitioner was acquitted of one count of false imprisonment and an additional count of felony-firearm.  On March 13, 2008, he was sentenced to concurrent terms of 15-40 years' imprisonment on the armed robbery convictions, consecutive to a mandatory term of two years' imprisonment on the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     THE TRIAL JUDGE REVERSIBLY ERRED BY ADMITTING, OVER OBJECTION, THE TAPE OF A COUNSELLESS [sic] INTERROGATION OF MR. CARGILL WHICH TOOK PLACE PRIOR TO MR. CARGILL BEING GIVEN *MIRANDA* WARNINGS AND AFTER MR. CARGILL HAD EXERCISED HIS RIGHT TO REMAIN SILENT.

II.    RESENTENCING IS REQUIRED BECAUSE THE SENTENCING GUIDELINES WERE MISSCORED, WHICH RESULTED IN SENTENCE BEING IMPOSED ON THE BASIS OF AN IMPROPERLY CALCULATED GUIDELINES RANGE.

III.   REVERSAL AND/OR RESENTENCING IS REQUIRED BECAUSE TRIAL COUNSEL'S DEFICIENT PERFORMANCE DENIED MR. CARGILL HIS FEDERAL CONSTITUTIONAL RIGHT TO THE

2

EFFECTIVE ASSISTANCE OF COUNSEL.

IV.    REVERSAL IS REQUIRED BECAUSE THE PROSECUTOR'S SUBSTANTIAL AND MATERIAL MISCONDUCT DENIED MR. CARGILL HIS FEDERAL AND STATE CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL.

V.    THE TRIAL JUDGE CLEARLY ERRED BY DENYING MR. CARGILL'S REQUEST FOR ADDITIONAL SENTENCING CREDIT.

The court of appeals granted petitioner's motion to remand to the trial court for an evidentiary hearing on his ineffective assistance of counsel and sentencing claims.  The trial court conducted an evidentiary hearing, at the conclusion of which it denied petitioner's motion for a new trial, but granted petitioner additional sentencing credit.  The court of appeals subsequently found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Cargill*, No. 284893, 2009 WL 5194983 (Mich. Ct. App. Dec. 15, 2009) (per curiam).

4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Cargill*, 486 Mich. 902, 780 N.W.2d 795 (2010).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 1, 2011.  As grounds for the writ of habeas corpus, he raises the claims he raised in the state courts, except for his sentencing credit claim.

6.    Respondent filed his answer on October 12, 2011.  He contends that petitioner's first claim is barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims are without merit.

7.    Petitioner filed a reply to respondent's answer on November 16, 2011.

B.    *Factual Background Underlying Petitioner's Conviction*

3

Petitioner's conviction arises from the March 25, 2007, robbery of four people. The evidence adduced at trial was accurately summarized in petitioner's brief on appeal:

> At trial, testimony established that on March 25, 2007, three men followed Germain Overton, his girlfriend, and two children into Overton's house and robbed him and his girlfriend at gunpoint. They took cash and jewelry. Two of the three robbers made no attempt to conceal their faces. The third wore a hoodie, with the hood up, which he kept pulled close around his face so that only a portion of his face was visible. The robbery was set up by Keenan King's cousin, Jamal Ellison (a/k/a Marley), who called Keenan King in Detroit and invited him to Jackson to rob a drug dealer.
>
> Germain Overton testified that at the time of the robbery he thought he recognized the robber wearing the hoodie. He identified Mr. Cargill as that individual. He said he [was not] shown a photographic lineup which contained Mr. Cargill's picture. However, Jackson City Police Department Detective Brett Stiles testified that he showed Overton a photographic lineup which contained Mr. Cargill's picture and that Overton failed to identify Mr. Cargill.
>
> Carita Keene testified that she could not identify Mr. Cargill as one of the robbers.
>
> Brack Rucker, testifying in accordance with a plea agreement with the prosecution and hoping that his cooperation would result in a reduced sentence, admitted that he was one of the three robbers. He said that Mr. Cargill was the robber who wore the hoodie. He admitted when testifying at Mr. Cargill's preliminary examination that he could not identify Mr. Cargill as one of the robbers. He did not tell the truth because he had not decided that it was in his best interest to do so. He said Keenan King and Mr. Cargill had guns, but that he did not touch a gun during the robbery.
>
> Keenan King, who had been convicted at a trial of armed robbery and felony firearm in connection with the same incident for which Mr. Cargill was on trial, testified that he was serving a 20 to 40 year prison sentence. He said that he had not entered into any agreement with the prosecution, but did not expect to serve his entire sentence. He said that Mr. Cargill was one of the robbers. As far as he knew, only one gun was used during the robbery. He did not know who had it first, but the last person he saw it with was Rucker.
>
> Shelba King, Keenan King's sister, testified that the day after the robbery Mr. Cargill called her and then came over to her house. She said Mr. Cargill told her that her brother had been arrested in Jackson during a botched robbery attempt. She said that he admitted being involved in the robbery. She said Mr. Cargill told her that he and Brack Rucker had the guns. She did not contact the police about that conversation. The first time she told anyone about that conversation was when the police came to her house on November 1, 2007. She said that if the police had not come to her house on November 1, 2007, she would have contacted the police on November 2, 2007.

Detective Stiles testified that after Mr. Cargill was arrested in Detroit, he transported Mr. Cargill back to Jackson. He said that when he attempted to question Mr. Cargill about the robbery, Mr. Cargill told him that he wanted to talk to him but not at that time. Over objection, the trial judge allowed the prosecutor to play a videotape of the prosecutor's questioning of Mr. Cargill.

In her rebuttal argument, the prosecutor asserted that Mr. Cargill's demeanor during the questioning by Detective Stiles showed a consciousness of guilt.

In finding Mr. Cargill guilty of two counts of armed robbery and felony firearm, the presiding judge stated that the videotaped questioning of Mr. Cargill indicated that Mr. Cargill had some knowledge of the charged robbery.

Def.-Appellant's Br. on Appeal, in *People v. Cargill*, No. 284893 (Mich. Ct. App.), at 1-3 (citations to trial transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

6

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Miranda (Claim I)*

In his first claim, petitioner contends that his privilege against self-incrimination was violated when the prosecution introduced a video of his statement to the police that was made without petitioner having been given *Miranda* warnings. Respondent argues that this claim is barred by petitioner's procedural default in the state courts. The Court should agree.

1.      *Default*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be

7

interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default."). Habeas review of a defaulted claim is barred "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).

Here, petitioner's *Miranda* claim is defaulted. The Michigan Court of Appeals concluded that although petitioner's relevance objection to the statement was preserved because petitioner had objected on that basis at trial, petitioner "failed to preserve the constitutional aspect of this issue for review because he did not object in the trial court on the same grounds." *Cargill*, 2009 WL 5194983, at *1. The court of appeals therefore reviewed the claim only for plain error. *See id.* at *1-*2. Thus, in rejecting petitioner's claim, the Michigan Court of Appeals clearly and expressly relied on a state procedural rule that was independent of the federal claim. Further, this state procedural rule, commonly known as the contemporaneous objection rule, was firmly established and regularly followed at the time of petitioner's trial. *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989). As the state court clearly and expressly relied on this state procedural rule with respect to petitioner's jury instruction and prosecutorial misconduct claims, these claims are barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice. *See Engle v. Isaac*,

456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).

Further, this conclusion is not altered by the fact that the Michigan Court of Appeals did consider the merits of petitioner's *Miranda* claim.  It is clear that the court of appeals did so only in the context of determining whether petitioner could establish plain error to overcome his procedural default.  "[P]lain error review by the state court does not constitute a waiver of procedural default rules."  *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also*, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Accordingly, the Court should conclude that petitioner's *Miranda* claim procedurally defaulted.

    2.    *Cause and Prejudice*

The first exception to the procedural default rule is the cause and prejudice exception.  Under this exception, review of an otherwise barred claim is allowed if petitioner is able to demonstrate cause for, and prejudice attributable to, his default.  *See Coleman*, 501 U.S. at 750; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also*, *Coleman*, 501 U.S. at 753.  Petitioner asserts that counsel was ineffective for failing to object on constitutional grounds at trial.  As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment.  *See id*.  The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental

9

right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

   As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

Here, regardless of whether counsel was failing to object on constitutional grounds to the

admission of his statement to the police,[1] petitioner cannot show that he was prejudiced by counsel's

---

[1]Respondent argues that counsel's failure to object was a reasonable tactical decision, in light of counsel's testimony at the evidentiary hearing that, because petitioner chose not to testify and his alibi could not be substantiated, he thought that the recording might have helped petitioner's case because petitioner did not make any incriminating statements in the recording.  *See* Hr'g Tr., dated 2/20/09, at 14-18.  Had counsel made such a reasoned tactical decision, it would be difficult to challenge.  Counsel's

failure to object.  Even assuming that an objection on constitutional grounds would have been

sustained,[2] petitioner cannot show a reasonable probability that the result of the proceeding would

have been different had this evidence been excluded.  As the court of appeals explained, "[t]he

recording was brief, defendant did not make incriminating statements, and the prosecutor's comment

regarding the evidence was limited to the end of her rebuttal arguments."  *Cargill*, 2009 WL

5194983, at *2.  Further, as explained by the court of appeals, there was strong evidence implicating

petitioner, namely the testimony of petitioner's two co-conspirators and the testimony of two others.

"The primary victim in this case testified that he was 'certain' and '100 percent certain' that

[petitioner] was one of the men who broke into his home and robbed him."  *Id.*  Petitioner's two co-

---

testimony that he wanted the statement to come into evidence is suspect, however, in light of the fact
that at trial counsel had objected to the statement, albeit on the grounds of relevance.  It is difficult to
square this earlier attempt to exclude the evidence on a different ground with counsel's subsequent
testimony that he wanted the evidence to come in.  The court need not resolve whether counsel's
performance was deficient because, as explained below, petitioner cannot show that he was prejudiced
by counsel's failure to object.

[2]The Michigan Court of Appeals concluded that there was a *Miranda* violation because "[a]ll of
the questions were asked before defendant was advised of and waived his *Miranda* rights."  *Cargill*, 2009
WL 5194983, at *1 (footnote omitted); *see also*, *id.* at *2.  It is not clear that the court of appeals fully
analyzed this issue, or that it came to the correct conclusion.  Although the tape did not include an
advisement of rights, Detective Stiles testified that he read petitioner his rights, *see* Trial Tr., Vol. I, at
143, and counsel testified at the evidentiary hearing that he did not object partly because there was a
reference in police reports to *Miranda* warnings having been given, and that his suspicion was that the
warnings were given before the recording was started.  *See* Hr'g Tr., dated 2/20/09, at 10-11.  In denying
petitioner's motion for new trial, the trial judge concluded that petitioner had failed to meet his burden
of establishing that there was a *Miranda* violation.  *See id.* at 34.  Were it necessary to reach the merits of
petitioner's *Miranda* claim, the court of appeals's finding of a constitutional violation would not be
entitled to deference, and would be subject to *de novo* review.  *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th
Cir. 2007) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (in turn quoting 28 U.S.C. § 2254(d)))
(explaining that a court "should not apply AEDPA deference to [a] state court's pro-petitioner
resolution of [an] issue because AEDPA's standard of review is 'a precondition to the grant of habeas
relief ("a writ of habeas corpus . . . shall not be granted" unless the conditions of § 2254(d) are met), not
an entitlement to it.'").  In any event, as explained below even if a motion to exclude this evidence on
constitutional grounds had been granted, petitioner cannot show prejudice.

conspirators testified to petitioner's involvement, and a fourth witness testified that petitioner "admitted to her after the offense that he participated in the robbery." *Id*. Petitioner's "statement," if it can even be called that, did not implicate him in any way or add anything significant to the case.

Petitioner nevertheless contends that the statement was prejudicial because, in making his findings of fact, the trial judge indicated that the statement was "somewhat significant" in showing that petitioner had some knowledge of the incident. Trial Tr., Vol. II, at 14-15. In context, however, this statement does not suggest that the statement played a significant role in the judge's determination of the facts. This statement by the trial judge regarding the taped interview was brief, occurring after an extensive discussion of the testimony of the witnesses. *See id*. at 6-15. And although the judge described the statement as "somewhat significant," he also indicated that he "really didn't attach a great deal of significance to the testimony." *Id*. at 14. In finding petitioner guilty, the trial court relied extensively on Germain Overton's positive identification of petitioner, *see id*. at 7-8; Carita Keene's testimony corroborating Overton's account of the robbery, *see id*. at 8-9; the testimony of Keenan King's sister that petitioner confessed to her, which the court found "believable," *id*. at 10; the testimony of King, a co-conspirator, who the court found to be "largely . . . credible," *id*. at 11; and the testimony of the third perpetrator, Brack Rucker, whose testimony, although not "as credible as that of some of the other witnesses," *id*. at 12, provided corroboration for the testimony of those other witnesses. Summarizing, the court explained:

> So the Court is satisfied in assessing the various testimony. Clearly I think Germain Overton had an ability to see and hear clearly, he was clearly watching, listening to what was going on when he was ultimately attacked when walking in his home. I don't think there was anything that really went on that distracted him. He seemed to have a good memory, he seemed to consist – testify consistently with his testimony before. The same thing for Ms. Keene.
> Even the young child, when I consider their [sic] age and maturity, again, the young minor child that did testify, his testimony further corroborated in particular

13

> the physical description of the defendant wearing this hoodie, which again was a common denominator from a number of different witnesses and two of the co-defendants who both plead guilty to armed robbery in this.

*Id*. at 16.  Nothing in the trial court's findings of fact suggest that the judge's credibility findings were in any way implicated by petitioner's videotaped interview, and it is clear from the judge's findings that these credibility determinations alone resulted in the guilty verdict.  Thus, "[e]ven if counsel was somehow deficient for failing to [object on constitutional grounds to the statement], petitioner is unable to show that he was prejudiced, in light of the fact that the trial court judge found these witnesses' testimony to be truthful."  *Price v. Romanowski*, No. 2:07-CV-10776, 2008 WL 186361, at *6 (E.D. Mich. Jan. 22, 2008) (citing *Barnes v. Elo*, 339 F.3d 496, 503 (6th Cir.2003)).

Finally, any claim of prejudice is dispelled by the trial court's denial of petitioner's motion for a new trial.  In denying that motion the judge, who was the same judge that presided at petitioner's bench trial, determined that even if there was a violation there was not a reasonable possibility of acquittal had counsel objected on constitutional grounds.  *See* Hr'g Tr., dated 2/20/09, at 34.  "[P]etitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness in light of the fact that the same trial judge who convicted petitioner at his bench trial indicated that []he still would have found petitioner guilty" notwithstanding counsel's error.  *Price*, 2008 WL 186361, at *6 (citing *Dunham v. Travis*, 313 F.3d 724, 732 (2nd Cir. 2002); *Harper v. Jackson*, No. 05-CV-74413, 2007 WL 2121940, at *11 (E.D. Mich. July 24, 2007) (Cleland, J., adopting report of Komives, M.J.); *Robinson v. Wolfenbarger*, No. 04-CV-70929, 2006 WL 897333, *3 (E.D. Mich. Apr. 5, 2006) (Tarnow, J.); *see also*, *Garrett v. Prelesnik*, No. 09-11076, 2011 WL 2560266, at *10 (E.D. Mich. June 28, 2011) (Roberts, J.).  Because petitioner cannot show that he was prejudiced by counsel's failure to object, he cannot show that counsel provided constitutionally ineffective

14

assistance under the Sixth Amendment. It therefore follows that he cannot establish cause to excuse his procedural default in the state courts. Because petitioner must establish both cause and prejudice, his failure to establish cause makes it unnecessary to consider the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Nevertheless, because he cannot show that he was prejudiced by counsel's failure to object, he likewise cannot show that he would be prejudiced by the Court's failure to consider his claim on the merits.[3]

### 3. *Fundamental Miscarriage of Justice*

Under a second exception, known as the "fundamental miscarriage of justice" exception, petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation omitted).

Although petitioner contends in general that he did not commit the crime, he does not argue

---

[3]And for the same reason, petitioner cannot show that he is entitled to relief on the merits were the Court to consider the merits. Even assuming that a constitutional error occurred with respect to the trial court's limitation on this testimony, petitioner is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also*, *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review). For the reasons explained above, petitioner cannot show that the introduction of the videotape had a substantial and injurious influence or effect on the trial judge's verdict.

that he meets the fundamental miscarriage of justice exception, nor does he present any new reliable evidence that he is factually innocent of the charges against him. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Thus, he has failed to establish that application of the procedural bar will result in a miscarriage of justice.

E.      *Sentencing (Claim II)*

        In his second claim, petitioner contends that the trial court incorrectly scored the sentencing guidelines. Specifically, he contends that the court improperly scored 15 points for Offense Variable (OV) 8 (asportation of a victim to a place of greater danger) and improperly scored 50 points for OV-7 (torture or excessive brutality).[4]   The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        With respect to the scoring of the guidelines, petitioner's claim is not cognizable on habeas review.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not

---

[4]Petitioner also contended in the state courts that the trial court erred in scoring OV-16 and OV-17.  On remand, those offense variables were scored at zero points.

16

cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Petitioner's contention that he was sentenced on the basis of inaccurate information does not alter this conclusion. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F.

Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Here, petitioner cannot show that he was sentenced based on any inaccurate information. With respect to OV-7 and OV-8, petitioner's challenge is not to the accuracy of the information relied upon by the trial court. Rather, he contends that the facts relied upon by the trial court were insufficient as a legal matter to support the trial court's scoring of those variables. He contends that movement of the victims within the house was insufficient to constitute asportation, and that the facts did not rise to the level of showing excessive brutality. As noted above, the legal sufficiency of the facts to support the scoring of an offense variable is a question of state law which is not cognizable on habeas review. *See Norton v. Lafler*, No. 08-12797, 2010 WL 5672743 (Apr. 19, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2011 WL 318099, at *2 (E.D. Mich. Jan. 31, 2011) (Hood, J.); *Southward v. Warren*, No. 2:08-CV-10398, 2009 WL 6040728, at *19 (July 24, 2009) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 733035, at *2 (E.D. Mich. Feb. 26, 2010) (Steeh, J.). At best, petitioner's argument boils down to a dispute over the trial court's resolution of factual questions. However, this is insufficient to establish that he was sentenced on the basis of material false information in violation of his right to due process under *Townsend* and *Tucker*. As the Court made clear in *Townsend*, an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741. "Thus, what is essential is that the sentencing judge decide upon the

18

sentence after being made aware of all exculpatory evidence and of the defendant's version of the story." *United States v. Von Saltzer*, 532 F. Supp. 584, 586 (D. Nev. 1982). Here petitioner, through counsel, objected to the scoring of the offense variables and presented his version of the facts. *See* Sentence Tr., at 26-29. The trial judge, based on the information available, drew inferences from the facts and made factual findings. While petitioner disputes those findings, he has offered nothing to show that they were materially false. Thus, he has failed to establish a due process violation under *Townsend*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Nor is petitioner's sentence invalid because, on remand, the trial court scored OV-8 at 50 points when it had previously scored that offense variable at zero points. Petitioner contends that because the prosecutor admitted that OV-16 and OV-17 had been improperly scored, the trial judge improperly "juggled" the offense variable scores and added the 50 points for OV-8 to avoid resentencing petitioner. There was nothing improper, however, in the trial court considering anew any sentencing factor on remand. And question as to the scope of the trial court's power on remand is a question of state law that is not cognizable on habeas review. *See Russell v. Hernandez*, No. CV 08-38-PA, 2010 WL 2557698, at *4 (May 10, 2010), *magistrate judge's report adopted*, 2010 WL 2555758 (C.D. Cal. June 17, 2010); *cf. Ward v. Williams*, 240 F.3d 1238, 1244 (10th Cir. 2001) (under the Double Jeopardy Clause, "a court may reimpose the same total sentence after an appeal by increasing the sentence on a different count upon which sentence was imposed in conjunction with the sentence successfully challenged."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Prosecutorial Misconduct (Claim IV)*

19

Petitioner next contends that the prosecutor committed misconduct by improperly using the videotape, and by presenting perjured testimony. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Use of Videotaped Statement*

*a. Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

20

*b.  Analysis*

Petitioner contends that the prosecutor committed misconduct by arguing that petitioner's conduct on the videotape demonstrated a consciousness of guilt, because the tape was inadmissible under *Miranda*.  Because petitioner failed to object to the prosecutor's comment at trial and the Michigan Court of Appeals relied on this failure in denying relief, *see Cargill*, 2009 WL 5194983, at *4, this claim is procedurally defaulted for the same reason as petitioner's underlying *Miranda* claim.  In any event, the claim is without merit.  Regardless of whether the trial court's evidentiary ruling was proper, because the trial court concluded that this evidence was admissible, the prosecutor did not commit misconduct by introducing the evidence or commenting on it during argument.  *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Hammond v. Michigan Parole Bd.*, No. 04-73385, 2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006) (Roberts, J., adopting Recommendation of Komives, M.J.).  As the Sixth Circuit recently explained, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."  *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  Further, petitioner cannot show that the comment deprived him of a fair trial.  As explained above, the trial court's verdict was premised on the witnesses' testimony and the court's finding that the witnesses were credible, and not on the videotape.  Thus, the comments were not prejudicial, and petitioner is not entitled to habeas relief on this claim.

2.  *Perjured Testimony*

*a.  Clearly Established Law*

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false

21

testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343

With respect to the first element, it is well established that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent

to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g., Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari)

(noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.").

### b. Analysis

Petitioner contends that King perjured himself at petitioner's trial by testifying that he was one of the robbers, and that petitioner was likewise one of the robbers, because at his own trial King testified that he was merely at Overton's house to buy marijuana, did not participate in the robbery, and did not know who perpetrated the robbery. There is no doubt that these two versions are wholly inconsistent, and that one of the two amounted to perjury. However, petitioner has presented nothing to show that King's "second story was untrue." *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007). It is just as likely (or perhaps more so, given that he was trying to secure his own freedom) that King perjured himself at his own trial but told the truth at petitioner's trial. The mere fact that the two accounts were different establishes only that King committed perjury at one of the trials; it does not establish that King committed perjury at petitioner's trial. *See Bass*, 478 F.3d at 951. Indeed, petitioner himself asserts that, at King's sentencing, King admitted to committing perjury in his own trial. *See* Br. in Supp. of Pet., at VII. In these circumstances, petitioner has failed to meet his burden of establishing that King's testimony at his trial amounted to perjury, or that the prosecutor should have known that it amounted to perjury. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Ineffective Assistance of Counsel (Claim III)*

Finally, petitioner contends that counsel was ineffective in a number of respects. Specifically, he contends that counsel was ineffective for: (1) failing to object to the introduction of the videotape and the prosecutor's comments; (2) failing to impeach King with his prior testimony; (3) acting against petitioner's interests at sentencing; and (4) failing to move to suppress Overton's in-court identification. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

25

decisions in the exercise of reasonable professional judgment." *Id*. at 690.  With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.

Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.
> Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,
> 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*,
> 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether
> an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>    Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard

26

against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

a. *Failure to Raise* <u>Miranda</u> *Objection*

Petitioner first contends that counsel was ineffective for failing to raise a *Miranda*-based challenge to the introduction of his videotaped statement and the prosecutor's comment during closing argument regarding the statement. The Michigan Court of Appeals rejected this claim, concluding that petitioner could not establish prejudice. *See Cargill*, 2009 WL 5194983, at *3. This determination was reasonable. As noted above in connection with petitioner's substantive claim, neither the videotape nor the prosecutor's comment influenced the trial court's verdict. Rather, it is clear that the verdict was based on the trial court's assessment of the credibility of the prosecution witnesses, and it is clear from the trial court's ruling on petitioner's motion for new trial that the court would have reached the same conclusion absent the introduction of the videotape and the prosecutor's comment. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

b. *Failing to Impeach King*

Petitioner next contends that counsel was ineffective for failing to impeach King with testimony from his own trial in which King stated that neither he nor petitioner participated in the robbery. The Michigan Court of Appeals rejected this claim, reasoning that "counsel's strategic decision not to impeach King with his prior testimony did not fall below an objective standard of reasonableness" because "King's prior statement was not of significant value for impeachment

27

purposes because it lacked credibility where King had motive to make a false statement at the time in order to avoid a felony conviction," and because "had defense counsel impeached King, the prosecutor could have used prior consistent statements King offered during the sentencing phase of his proceeding." *Cargill*, 2009 WL 5194983, at *3. This determination was reasonable.

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.); *see Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 489 (9th Cir. 2000). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell*, 194 F. Supp. 2d at 1219; *accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.). The mere fact that other avenues of impeachment may have existed does not render counsel ineffective; counsel need not "develop every bit of testimony through all available inconsistent statements." *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also*, *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (internal quotation omitted) (counsel not ineffective even though "other testimony might have been elicited from those who testified."); *United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment information on cross-examination).

Here, counsel could have reasonably concluded that it was better to impeach King on inconsistencies in his testimony and by pointing to his motive to testify, rather than impeach him with his testimony at his own trial. As noted by the court of appeals, King's testimony at his own trial was of limited credibility, because he was highly motivated at that time to exonerate himself. And pursuing this testimony would have opened the door to admission of King's statements at

sentencing, during which he admitted that he lied in his own trial and was involved in the crime. These statements would have had a far greater inculpatory effect than any exculpatory effect to be gained by impeaching King with his prior trial testimony. *See Wong v. Belmontes,* 130 S. Ct. 383, 386 (2009) (per curiam) (in evaluating petitioner's ineffective assistance claim, "it is necessary to consider *all* the relevant evidence that the jury would have had before it if [counsel] had pursued the different path–not just the . . . evidence [counsel] could have presented, but also the [rebuttal evidence] that almost certainly would have come in with it."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claims.

### c. *Sentencing*

Petitioner next contends that counsel was ineffective by acting against his interests at sentencing. Specifically, he contends that counsel inappropriate argued that points should be scored on OV-8 and OV-16, even though the probation department had scored no points for these offense variables. During sentencing, counsel agreed with the prosecutor that OV-8 should be scored at 15 points and that OV-16 should be scored at 5 points. *See* Sentence Tr., at 7-8. The Michigan Court of Appeals rejected petitioner's claim, concluding that counsel's performance was not deficient because the evidence supported the scoring, and counsel has a duty of candor to the court. *See Cargill*, 2009 WL 5194983, at *4 (discussing MICH. R. PROF'L RESPONSIBILITY 3.3(a)(3)). The Court should conclude that this determination was reasonable. Under Rule 3.3(a)(3), an attorney's duty of candor to the court includes the duty to disclose to the court any controlling legal authority adverse to the client. A criminal defendant's right to the effective assistance of counsel does not extend to having counsel violate the ethical rules to which counsel is bound. *See Nix v. Whiteside*, 475 U.S. 157, 168 (1986). Accordingly, the Court should conclude that petitioner is not entitled to

29

habeas relief on this claim.

### d. Failure to Suppress Identification

Finally, petitioner contends that counsel was ineffective for failing to move to suppress Overton's in-court identification of him as one of the robbers. Petitioner contends that Overton stated immediately after the robbery that he did not know of any of the robbers, could not provide a description to the responding officers, and failed to pick his photograph from an array shown to him by Detective Stiles. The Michigan Court of Appeals rejected this claim, concluding that petitioner had failed "to advance any legal authority to support the contention that the victim's testimony was inadmissible[.]" *Cargill*, 2009 WL 5194983, at *4. The court should conclude that this determination was reasonable.

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the

30

circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114. Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

Here, petitioner has pointed to no impermissibly suggestive pretrial identification procedure that tainted Overton's in-court identification. Petitioner offers no evidence to demonstrate that the photographic array was impermissible suggestive, and the fact that Overton failed to identify petitioner in that array supports the conclusion that the array was not impermissibly suggestive. Petitioner appears to argue that, because Overton could not previously identify him, petitioner's presence at the preliminary examination and trial where Overton identified him were themselves impermissibly suggestive. However, in *Perry v. New Hampshire*, 132 S. Ct. 716 (2012), the Court recently explained that the dangers of identification testimony are ordinarily to be combated by the safeguards inherent in the criminal justice system, including the rights of counsel, compulsory process and confrontation, and that reliability is determined by the finder of fact. A pretrial

31

determination of reliability by the court is required only where the identification results from impermissibly suggestive pretrial procedures *arranged by the police*. *See id*. at 721 & n.1, 724-28, 730. Specifically, the Court held:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id*. at 721. Here, petitioner does not allege that there was any "improper law enforcement activity . . . . involved" in Overton's identification. He points to no facts suggesting that the photographic lineup in which Overton failed to identify him was impermissibly suggestive, and indeed the fact that Overton failed to identify petitioner supports the conclusion that the lineup was not impermissibly suggestive. Overton made his identification based on his observation of petitioner in court at the preliminary hearing and at trial. As the Supreme Court observed in *Perry*, "all in-court identification" "involve some element of suggestion." *Id*. at 727. Such identifications, however, do not require a pretrial determination of admissibility. *See id*. And because petitioner cannot show that the in-court identification was inadmissible by virtue of a suggestive pre-trial identification procedure, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

32

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."
Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a
certificate of appealability "state the specific issue or issues that satisfy the showing required by §
2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of
Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not
issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory
committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either
grant or deny the certificate of appealability at the time of its final adverse order, I include a
recommendation regarding the certificate of appealability issue here.

        2.    *Analysis*

      If the Court accepts my recommendation regarding the merits of petitioner's claims, the
Court should also conclude that petitioner is not entitled to a certificate of appealability.  It is not
reasonably debatable that petitioner's *Miranda* claim is barred by petitioner's procedural default in
the state courts.  And because both the trial court's findings of fact at the conclusion of the trial and
its subsequent ruling on petitioner's motion for new trial clearly show that the alleged impermissible
evidence did not affect the court's verdict, it is not reasonably debatable that petitioner failed to
establish ineffective assistance of counsel as cause for his default.  For the same reasons, the
resolution of petitioner's related prosecutorial misconduct and ineffective assistance claims is not
reasonably debatable.  Because sentencing claims are not cognizable on habeas review and petitioner
failed to demonstrate that his sentence was based on any materially false facts, the resolution of
petitioner's sentencing claims is not reasonable debatable.  And for the reasons explained above, the
resolution of petitioner's remaining ineffective assistance claims is not reasonably debatable.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:   November 30, 2012

**Proof of Service**

The undersigned certifies that a copy of the foregoing **Report and Recommendation** was served on the attorneys and parties of record herein by electronic means or U.S. Mail on November 30, 2012.

s/Kim Grimes
Acting in the Absence of
Eddrey Butts, Case Manager